EMMA J. VAN EPPS *vs.* JOHN R. REDFIELD, ADMINISTRA-
TOR, ET AL.

First Judicial District, Hartford, May Term, 1896. ANDREWS, C. J., TOR-
RANCE, FENN, BALDWIN and HAMERSLEY, Js.

A contract made between the father and mother of an illegitimate child
shortly after its birth in 1884, whereby she agreed not to institute bas-
tardy proceedings to compel him to contribute to the child's support,
and in consideration of which he promised and agreed to convey to her
certain real estate, is one founded upon a sufficient legal consideration,
is not opposed to public policy and, in the exercise of its discretion,
may be specifically enforced by a court of equity against him, or, in the
event of his death, against his solvent estate. Accordingly it is error
to sustain a demurrer upon these grounds, to a complaint alleging
such a contract and praying for its specific enforcement.

Whether a court of equity ought, however, to decree the specific perform-
ance of such a contract in a particular case, cannot be determined
upon demurrer, but only after a hearing on the facts. An oral agree-
ment affecting real estate will not be enforced, unless its existence and
terms are duly and conclusively established, and the contract itself is
certain, equal and fair, and founded upon a valuable, as distinguished
from a merely good or moral, consideration; and even when so proven,
it is not a matter of right but of sound discretion.

In the present case the complaint prayed for relief by way of specific
performance and also for damages, and the defendants demurred to
both prayers. *Held* that the demurrer to the claim for damages was
properly sustained; but that the equitable relief asked for was appro-
priate to the allegations of the complaint, and therefore the demurrer
to this prayer for relief should have been overruled.

The defendants also demurred to the complaint upon the ground that the
contract therein set forth did not come within the rules applicable to
the specific performance of an oral agreement relating to real estate.
*Held* that the question sought to be raised by this ground of demurrer
was not properly before the court, since it did not appear from the
pleadings that the contract relied on by the plaintiff was in fact an
oral contract.

In 1887 an Act was passed (General Statutes, §§ 1209, 1210), qualifying and
limiting the right of the mother of an illegitimate child to effect a set-
tlement with the father. *Held* that as the contract in question was
made in 1884, this statute did not affect it.

A judgment based upon an erroneous view of the law, cannot be upheld
upon the ground that such a judgment was within the discretion of the
court, if it is evident from the record that the trial court proceeded
upon the theory that it had no discretion in the premises.

[Argued May 13th—decided June 5th, 1896.]

SUIT to compel the defendants to convey certain real estate to the plaintiff, and for damages, brought to the Superior Court in Hartford County and tried to the court, *Thayer, J.*, upon the defendants' demurrer to the complaint; the court sustained the demurrer and rendered judgment for the defendants, and the plaintiff appealed for alleged errors in the rulings of the court. *Error and judgment reversed.*

The case is sufficiently stated in the opinion.

*William B. Stoddard* and *Sylvester Barbour*, for the appellant (plaintiff).

There was a good and valuable consideration for the contract, and such a part performance that a court of equity will vest the title in the plaintiff. The deceased was benefited by reason of not being compelled by legal proceedings to pay a just liability, and he also avoided the expense and disgrace of such proceedings. This was certainly a valid and legal consideration, recognized and enforced in the courts of every civilized community. *Spalding* v. *Fitch*, 1 Root, 319; *Hinman* v. *Taylor*, 2 Conn. 360; *Smith* v. *Richards*, 29 id. 232; *Hamden* v. *Merwin*, 54 id. 418; 1 Swift's Dig. top page 216; *Gisaf* v. *Neval*, 81 Pa. St. 354; *Davis* v. *Herrington*, 53 Ark. 6; *Burgen* v. *Straughan*, 7 Ky. 584; *Mercer* v. *Mercer*, 87 id. 30; *Clarke* v. *McFarland*, 5 Dana (Ky.), 45; *Hargrove et al.* v. *Freeman*, 12 Ga. 342; *Hays* v. *McFarlan*, 32 id. 702; *Maxwell* v. *Campbells*, 8 Ohio St. 269. An agreement by the father of an illegitimate child to pay the mother for its support, is not illegal and will be enforced in a court of law. *Hook* v. *Pratt*, 78 N. Y. 371; *Armstrong* v. *Toler*, 11 Wheat. 258; Schouler's Dom. Relations, § 279. The statutory and common law liability to contribute to the support of a person, is a sufficient consideration to sustain an action. *Stone* v. *Stone*, 32 Conn. 142; *Graves* v. *Atwood*, 52 id. 512. This contract is certain in all its terms, in reference to the particular real estate, and the duties to be performed by the parties; is equal and fair, upon a valuable consideration, and is enforceable in equity. *Hodges* v. *Kowing*, 58 Conn. 12; *Neale* v. *Neale*, 9 Wall. 1; Bispham's

Principles of Equity, § 364. The contract has been fully performed by the plaintiff, and partially performed by the deceased, who purchased the property and delivered the possession of it to the plaintiff, thus fully complying with the law in reference to part performance. *Eaton* v. *Whittaker*, 18 Conn. 229; *Green* v. *Finin*, 35 id. 181; *Wainwright* v. *Talcott*, 60 id. 52; *Andrews* v. *Babcock*, 63 id. 109. Section 1209 of the General Statutes, passed in 1887, cannot affect this agreement made in 1884. But in Massachusetts under a similar statute, the mother has power to release the father from liability to herself, without the consent of any party whomsoever. *Wheelwright* v. *Sylvester*, 4 Allen, 59; *Haley* v. *Whalen*, 121 Mass. 533. Of the *adequacy* of the consideration which the father receives in his settlement with the mother, they are to be the judges. Parsons on Contracts, 439; Adams' Equity, side page 78; *Hargrove* v. *Freeman*, 12 Ga. 350.

*Charles E. Perkins*, for the appellees (defendants).

The plaintiff has no absolute right to the specific performance of any contract; the court has a discretion whether to enforce the agreement or not. *Patterson* v. *Bloomer*, 35 Conn. 63. This is not an agreement which will be enforced by a court of equity. The foundation of her case is fornication! It appears by the will annexed, that Wasserbach was a married man, and the plaintiff alleges directly that she never was married to him. To sustain such a claim as this would leave the estate of any deceased person at the mercy of any designing woman of bad character, who would swear to such a claim. It would be putting a premium upon prostitution, and be of bad example and against public policy. Specific performance of a contract will not be enforced unless it is made upon a consideration which is adequate, that is reasonably equal in amount to the value of the property agreed to be conveyed. *Dodd* v. *Seymour*, 21 Conn. 479. A mere moral obligation alone is not a consideration to sustain a promise. *Clement's Appeal*, 52 Conn. 476; *Cook* v. *Bradley*, 7 id. 63; *North* v. *Forest*, 15 id. 405. A mere state-

ment, as here, of "the 'legal obligation which Wasserbach was under to the plaintiff," is clearly not enough. The plaintiff must state from what that legal obligation arises, so that the court can see whether it is sufficient; and there is no suggestion here that there was any other consideration, legal or moral, than the fact of the illicit connection and the birth of the child. A past act is not a valid consideration. 3 Amer. & Eng. Ency. of Law, 838 ; *Plumb* v. *Curtis*, 66 Conn. 172. But it is also well settled, even at law, that a promise made in consideration of past illicit intercourse is void. 3 Amer. & Eng. Ency. of Law, 874; *Remington* v. *Wallace*, 4 Barn. & Ald. 650 ; *Beaumont* v. *Reeve*, 8 Q. B. 493. The plaintiff's counsel refers to the case of *Smith* v. *Richards*, 29 Conn. 232, as sustaining their claim, but no such question arose there. The promise by the plaintiff not to commence proceedings in bastardy against Wasserbach, if he would convey this house to her, did not constitute a valid consideration. It is very doubtful if such a consideration would be good even at law. There is a statutory provision by which, under certain circumstances, the person claimed to be the father, may be made to contribute to the support of a child, but no legal liability arises unless the provisions of the statute are followed. *Heath* v. *White*, 5 Conn. 235; *Dickinson's Appeal*, 42 Conn. 503 ; *Easly* v. *Gordon*, 51 Mo. App. 637. A promise on the part of the mother that she would not commence the suit, would not terminate the liability of the defendant. The general principle that courts of equity will not enforce any contract founded on any illegal or immoral transaction, is too well settled to need discussion. 1 Story's Equity, §§ 296–298; 22 Amer. & Eng. Ency. of Law, 1014 ; *St. Louis R. R.* v. *Terre Haute Co.*, 145 U. S. 393 ; *Platt* v. *Stonington Savings Bank*, 46 Conn. 476 ; *Batty* v. *Chester*, 5 Beav. 103 ; *Smyth* v. *Griffin*, 13 Sim., 14 L. J., N. S. Eq. 8 ; *Ayerst* v. *Jenkins*, L. R. 16 Eq. 275 ; *Benyon* v. *Nettlefield*, 3 Mac. & G. 94 ; *Drennan* v. *Douglas*, 102 Ill. 341 ; *Wallace* v. *Rapalye*, 103 id. 229.

FENN, J. The original complaint in this action was de-

murred to, and said demurrer was sustained. Thereupon an amended complaint was substituted. This was also demurred to, and again the demurrer was sustained. Although the appeal assigns error in reference to both of these rulings, we need only to consider the last complaint and the last demurrer, on which all the questions properly presented arise.

The cause of action alleged may be thus stated: John C. Wasserbach died September 12th, 1895, leaving a considerable estate, and a valid will. He also left one child, John C. Wasserbach, Jr. The estate is in settlement. Included in the inventory is a certain lot of land described in the complaint, with dwelling-house and other buildings thereon, situated in Hartford. Said child, John C. Wasserbach, Jr., was born May 20th, 1884. The plaintiff is his mother. The deceased gave the child his own name, by which name such child has always been called, and said child was always recognized by said deceased and adopted as his own child. The plaintiff and the deceased were never married. About the time of the birth of said child, " in consideration of the premises, and in consideration of the legal and moral obligation which the said Wasserbach, deceased, was under to the plaintiff, and in further consideration of the plaintiff's promise to, and agreement with, said Wasserbach, deceased, not to enforce by legal proceedings her legal rights and claims against him, said Wasserbach, deceased, to compel him to pay her towards the support and maintenance of said child, John C. Wasserbach, Jr., said Wasserbach, deceased, in part performance of his obligation to the plaintiff, agreed with and promised her to purchase and convey to her the aforesaid real estate premises, No. 14 Westland street, which property was formerly owned and occupied by members of the plaintiff's family and relatives of hers." The plaintiff, in fulfillment of her said promise to and agreement with said Wasserbach, deceased, has never commenced any legal proceedings against him, to compel him to pay any part of the expense for the support and maintenance of said child, but has always supported, maintained and educated said child at her own expense.

After said promise and agreement, said deceased, in pursuance thereof, on or about September 22d, 1885, purchased said real estate, but took the title in his own name. Immediately after such purchase he informed the plaintiff that he had purchased said real estate for her, according to his aforesaid promise and agreement, and delivered possession of said premises to the plaintiff, and informed her that said real estate premises were her own property, to be owned by her in fee simple, and be occupied by her as a home for herself and said child ; and the plaintiff entered into possession of said premises under a claim of ownership, and has ever since occupied, and now occupies the same with said child under said claim of ownership. This she did with the knowledge and consent of said deceased. From time to time since the aforesaid purchase and up to the time of his death, the deceased renewed his said promise to, and agreement with, the plaintiff, upon the considerations aforesaid, to convey to her the legal title to said real estate, and had partially made arrangements so to do in the summer of 1895, when he was suddenly killed by an accident, and never in fact did deliver to her a conveyance of said premises. The plaintiff claimed first, specific performance ; second, damages.

In addition to a demurrer to the relief sought, the following grounds of demurrer were stated :—

"1. Upon the allegations in the complaint the agreement set up is not one which will be enforced in a court of equity, as not coming within the rules applicable to the specific performance of a verbal agreement relating to real estate. 2. Said complaint does not state any good and sufficient consideration for the said agreement therein asked to be enforced, as the consideration of the premises and the legal and moral obligations the deceased was under to the plaintiff, is not a sufficient statement of a sufficient consideration for said agreement. 3. It is not a sufficient allegation to support the alleged agreement, that the plaintiff agreed not to enforce by legal proceedings her legal rights and claims against the deceased to compel him to pay her towards the support and maintenance of said child, as such agreement if ever made

would be invalid under § 1209 of the General Statutes without the consent or provision referred to in said section, and it is not alleged that such consent or provision was ever obtained. 4. Such agreement not to enforce said claim, if made, would not be a sufficient consideration, and would be contrary to public policy and void, nor would it have been an adequate consideration. 5. Said agreement alleged in said complaint for the specific performance of which said suit is brought, was void as against public policy, and is not such an one as a court of equity will enforce."

The demurrer to the legal relief, namely, damages, claimed upon the complaint, was well taken, and properly sustained by the court below, for reasons fully stated by this court in *Grant* v. *Grant*, 63 Conn. 530–545. The demurrer to the claim for equitable relief by way of specific performance, should have been overruled, because that was the appropriate relief to be demanded upon the allegations of the complaint, provided these were sufficient to call for any relief whatever. Rules of Practice, 58 Conn. 567, § 11.

We come then, to the special grounds of demurrer which have been stated. It is perhaps to be regretted that we cannot regard the first of these grounds as presenting any question properly before us, at this time, for decision. We are not at liberty to say that the plaintiff relies upon " a verbal agreement relating to real estate." The record discloses that the defendants moved in the court below that the plaintiff make the original complaint more specific, by stating whether the promise and agreement alleged to have been made to her was in writing, or verbal. This motion the court, however, overruled. It is true that a considerable portion of the complaint consists of allegations apparently introduced to show sufficient part-performance of an oral agreement to remove the operation of the statute of frauds. It is also true that a large part of the brief, as well as the oral argument before us in behalf of the plaintiff, was directed to the claim that the facts stated were sufficient to denote such valid part-performance. But notwithstanding this, we feel constrained to take the

pleadings as they are, and to be limited in our decision to the issues as they are presented upon the record.

This limitation prevents also the full application, as a test of the correctness of the decision of the court below, of the doctrines concerning discretionary power in the court, so ably urged upon us by counsel for the defendants. It is very apparent that the trial court, in deciding upon the demurrer, did so, not in the exercise of any actual or assumed discretion, but because in the view of the law held by said court a judgment in favor of the plaintiff, upon the allegations of the complaint, could not be vindicated or sustained, not because of discretion to so decide, but because it had, as it deemed, no discretion to do otherwise. If this be true, there was no occasion and no opportunity for the exercise of the power of discretion. If it be not true, the fact that such power did really exist does not justify a decision in no wise based upon it.

It is not too much to say, that there are cases where complaints may show what may be called (as it is called in Bispham's Equity, § 364) a *prima facie* right to come into equity, to ask specific performance, but after coming into equity it may, upon a hearing of facts relevant under such complaint and in support of its allegations, nevertheless appear that the contract is not so equitable, reasonable, certain, or on good, adequate, mutual consideration, consistent with policy, and free from fraud, suspicion or mistake, that specific performance should be decreed. *Patterson* v. *Bloomer*, 35 Conn. 57. In such a case a demurrer to the complaint will not reach the difficulty in the way of the plaintiff's recovery, which the full trial on the merits will disclose. On such a trial, the considerations which the defendants have urged upon us as reasons why the relief prayed for should, in the exercise of discretion, be denied, will doubtless receive, as they will merit, full attention and weight.

The third ground of the defendants' demurrer is not well taken, and was not pressed. General Statutes, § 1209, was not passed until 1887, and does not affect the validity of the alleged cause of action in this case.

The remaining grounds of demurrer present in effect only a single question: Does the complaint allege a contract founded upon sufficient consideration, consistent with public policy, which a court of equity, in the exercise of its discretion, can enforce?

Concerning the allegations of consideration in the complaint, what the legal or moral obligations of a person to a child which such person caused to be called by his own name and "always recognized and adopted as his own child," may be, it is unnecessary to inquire, since such child is in no sense a party to this suit. Nor is it essential to determine what obligation the said John C. Wasserbach, deceased, was under to the plaintiff, except so far as it enters into the question of the alleged consideration for the asserted agreement and promise to her. Upon the facts stated, he, the said Wasserbach, was, at the time stated—about the time of the birth of the child—by virtue of the statute (now General Statutes, §§ 1206–1208) under a legal obligation to the plaintiff, enforceable by what are called bastardy proceedings, based upon such statutory enactments. She thereby, and by reason of the premises, had a valid and lawful cause of action against him to compel him to assist her in the maintenance of their child. The prescribed proceeding is of a civil nature, and the plaintiff mother in such a suit has the rights of a party in an ordinary civil action, and her interest in such suit is a pecuniary one. *Town of Hamden* v. *Merwin*, 54 Conn. 418; *Booth* v. *Hart*, 43 id. 480–486; *Robbins* v. *Smith*, 47 id. 182–186. The complaint states that the plaintiff had the statutory right above referred to, and that in consideration of her promise and agreement not to enforce it by legal proceedings, but to support and educate the child without assistance from said Wasserbach, and at her own separate expense, he agreed and promised to convey to her the property in question. We cannot, in view of these allegations, indorse the claim of the defendants that "there is no suggestion here that there was any other consideration, legal or moral, than the fact of the illicit connection and the birth of the child," which assertion is made the basis of the claim that a past act is not a valid

consideration, and that "a promise made in consideration of past illicit intercourse is void," unless indeed under seal. We will not discuss or express any opinion here concerning the soundness of these propositions, because it appears to us that the obligation relied upon has its sufficient basis in the legislative authority which created it. Though were it necessary, it would be easy to see that the provisions of such statutes are not opposed to, but in furtherance of public policy, and in close accordance with the principles of natural justice.

But the defendants further claim that no liability as imposed by the statute arises, unless the statutory provisions are followed. The case of *Heath* v. *White*, 5 Conn. 228, 235, was referred to, where this court said : " There is no possibility of deciding who is the father of a child begotten on a lewd woman. Her testimony is permitted to rise so high in the scale of probability as to subject him to a contribution towards the child's maintenance, not as the father in fact, but the *putative* father only." But surely if the testimony of a lewd woman is permitted to rise so high in the scale of probability as to accomplish the effect stated, what shall be said of the altitude in the scale of such testimony, when coupled with the facts alleged, that the asserted father gave the child his own name, by which such child was always called, and always recognized and adopted it as his own child ? Truly, it cannot be claimed that this court meant to say in *Heath* v. *White*, that the putative father only of an illegitimate child is liable to contribution, but that the real father is not. But it is said liability attaches only at the end of litigation of bastardy proceedings, which might be brought by the mother or by the town, and then only the amount would be fixed which the defendant should pay, either to her or to the town, for some indefinite time. It is further said that a promise on the part of the mother that she would not commence the suit, would not terminate the liability of the deceased. As we have before said, the effect which the provisions of General Statutes, §§ 1209, 1210, might have had, if such statute had been in existence in 1884, is not involved, since such enactment was not made until 1887.

But the very provisions of those sections appear clearly to recognize the authority of the mother, prior to that time, to effect a settlement, and the object of the statute was to limit and qualify that before-existing right. But it is further to be noticed that the complaint alleges that a part of the promise which the plaintiff made and fulfilled, was to relieve the deceased, not alone from his obligation to her, but from the burden of the support, maintenance and education of the child, thus, in this way, at least, doing what would " terminate the liability of the deceased."

But finally, the defendants claim that the real question is whether the court, as a court of equity, will say that the consideration stated is such an adequate and sufficient one, that under the circumstances of the case it will enforce the specific performance of the alleged agreement. But regarding this claim, for reasons which we have already somewhat considered in another connection, we do not feel at liberty to base a decision in the defendants' favor upon it, as the case now stands. It is alleged in the complaint that the appraised value of the real estate claimed, is $3,300. What the amount of the burden from which the plaintiff relieved the deceased by her promise and undertaking was, or would have been, does not appear. The trial would probably disclose much material information bearing upon this question, of which we are ignorant. We can only refer to general principles applicable to the matter. In *Grant* v. *Grant, supra,* 540, 541, the cases of *Wallace* v. *Rapalye,* 103 Ill. 229, and *Woods* v. *Evans,* 113 Ill. 186, are quoted from and approved. The principle is affirmed that "specific performance of a verbal contract affecting real estate, will not be decreed except upon due and conclusive proof of its existence and terms, and that the contract must be certain, equal and fair, founded upon a valuable as distinguished from a merely good or moral consideration; and that so proven, it is not a matter of right, but of sound discretion." Such discretion, in such a case so proven, pertains, at least in the first instance, to the trial court; guided also by what is further said by the court in the citation above given, that such claims as the present,

" are always dangerous, and when they rest on parol evidence they should be strictly scanned."

There is error in the judgment complained of, and it is reversed.

In this opinion the other judges concurred.